IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN WILLIAMS,

     Plaintiff,                    No. 2:06-cv-2381 MCE CKD P

     vs.

D. L. RUNNELS, et al.,

     Defendants.               FINDINGS & RECOMMENDATIONS

                            /

I. Introduction

        Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. This action is proceeding on the Second Amended Complaint (SAC), filed March 17, 2008, which alleges that defendants delayed or denied giving plaintiff adequate medical treatment in violation of the Eighth Amendment while he was incarcerated at High Desert State Prison (HDSP). (Dkt. No. 25.) Pending before the court is defendant Scovel's September 9, 2011 motion for summary judgment (Dkt. No. 123) and plaintiff's September 22, 2011 motion for summary judgment (Dkt. No. 130).[1] For the reasons

---

[1] In findings and recommendations issued May 23, 2012, the court recommended this action be dismissed as to defendant Dial, the only other defendant remaining in the case. (Dkt. No. 161.)

discussed below, the undersigned will recommend that Scovel's motion be granted and plaintiff's motion denied.

II. Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On August 13, 2008, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 32.) See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

III. Discussion

A. Legal Standard

Plaintiff alleges that defendant Scovel, a registered nurse assigned to HDSP, was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's known serious medical needs. Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000). To establish deliberate indifference, an individual defendant must have "purposefully ignore[d] or fail[ed] to respond to a prisoner's pain or possible medical need." McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992) overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997). "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." Id. at 1059. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Or. State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981). Furthermore, where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay caused "significant harm and that Defendants should have known this to be the case." Hallett, 296 F.3d at 745-46; see McGuckin, 974 F.2d at 1060. Mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical

indifference." Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

B. Facts

On August 3, 2005, plaintiff was admitted to the Correctional Treatment Center (CTC) at HDSP after returning from the Washoe Medical Center in Reno, where he had undergone surgery to remove his prostate and repair a hernia. (Dkt. 123-1, hereinafter Defendant's Statement of Undisputed Facts (DUF) 4.) A doctor's order issued prior to discharge prescribed a course of Ibuprofen for seven days and Tylenol #3 with codeine for three days. (Dkt. No. 123-3 at 2.) Medical staff also noted on August 3 that plaintiff was "walking without assistance." (Id. at 5.) However, in his opposition to summary judgment, plaintiff claims that he had difficulty walking and could not walk down stairs or lift himself into the transportation van upon his discharge. (Dkt. No. 129.)

Plaintiff alleges that defendant Scovel was "a nurse who upon my return on 8-3-05, continuously refused me, plaintiff, my medications and thus, as a result plaintiff suffer[ed] phenomenal pain in the weeks of recovery ahead." (SAC at 5-6.)

In August 2005, Scovel was assigned to the CTC as the Lead RN. (DUF 8; see Dkt. 123-2 (Scovel Decl.) ¶ 2.) As Lead RN, Scovel did not treat individual patients, but acted in an administrative capacity. (DUF 9; Scovel Decl. ¶ 2.) His administrative duties included completing paperwork generated from the care of patients, sending doctor's orders to different sections of the prison, operation of the 32-bed CTC during the shift, and sending prescriptions to the pharmacy. (Scovel Decl. ¶ 2.) However, on August 4, 2005, Scovel worked a twelve-hour shift, from 7:00 a.m. to 7:00 p.m., on the floor treating patients, including plaintiff. (DUF 10; Scovel Decl. ¶ 3.)

In a sworn declaration submitted in support of summary judgment, Scovel states that on August 4, 2005,

> I administered Tylenol #3 with codeine to inmate Williams at 8:00 a.m. and again at 1:00 p.m. At those times, inmate Williams came to his cell door to receive his medication. At 6:30 p.m., I returned

> to inmate Williams' cell to administer Tylenol #3 with codeine but he refused to get it, and stated he did not want to get up from his bed to get his pain medication. I noted his refusal on a CDC 7225 Form Refusal of Examination And/Or Treatment and Nurse Murphy signed it as a witness. August 4, 2005 was the only day I had inmate Williams as a patient in my direct care, and I did not treat him at any other time during his stay at the CTC.
>
> I did not believe that inmate Williams' health or safety was placed at risk by not taking his Tylenol #3 with codeine at 6:30 p.m. on August 4, 2005.
>
> At no time did I intentionally or knowingly cause inmate Williams any pain, suffering, injury, or harm.

(Scovel. Decl. ¶¶ 3-6.) Attached medical records from CTC dated August 4, 2005 note that plaintiff received Tylenol #3 at 4:00 a.m., 8:00 a.m., and 1:00 p.m. Handwritten notes from the 6:30 p.m. round, apparently signed by defendant Scovel, state:

> IM [inmate] requested pain medication T#3 for . . . lower abdominal pain. IM refused to get out of bed. I reminded IM that he got up and walked to food port for medication twice earlier today, went to door of food port for meals X 3 today, and was up at door just prior to asking for pain medication. Offered pain medication once again. IM stated "Just forget it, I don't want it." Refusal form completed. IM refused to sign.

(Dkt. No. 123-3 at 10.) An attached Refusal of Examination and/or Treatment form notes these events and is signed by Scovel and Nurse L. Murphy on August 4, 2005. (Id. at 11.)

In deposition testimony, plaintiff stated that Scovel never examined him, and that outside his time in the CTC, he had no interactions with Scovel. (Dkt. No. 123-3 at 14.) He stated that his claim concerns only the period of time between August 3, 2005 and August 9, 2005, when he was discharged from the CTC. (Id.; see also Dkt. 123-3 at 7 (discharge form from CTC).) In his sworn declaration, Scovel states that August 4, 2005 was the only day he treated plaintiff as a patient; he did not treat him at any other time during his stay at the CTC. (Scovel Decl. ¶ 3.) Attached records of the HDSP nursing schedule between August 3, 2005 and August 9, 2005 appear to support this statement; in fact it appears that Scovel was on vacation on August 8-9. (Dkt. No. 123-3 at 17-23.) In his summary judgment briefing, plaintiff does not claim or

provide evidence showing that Scovel treated him on any day other than August 4, 2005.

      C.  <u>Analysis</u>

In the SAC, plaintiff made a general allegation that Scovel "continuously" denied him pain medication following his prostate surgery, leading to "phenomenal pain in the weeks of recovery ahead." (SAC at 5-6.) The previously assigned magistrate judge found these allegations to state an Eighth Amendment medical indifference claim against Scovel. (Dkt. No. 29.) However, at the summary judgment stage, it appears that plaintiff's claim against Scovel boils down to his failure to provide him pain medication on one occasion, at 6:30 p.m. on August 4, 2005. On that occasion, plaintiff refused or was unable to come to his cell door, and Scovel made no further efforts to administer that dose to him; rather, he noted in his paperwork that plaintiff had refused the dose. From the record before the court, Scovel's actions certainly did not rise to the level of deliberate indifference. Nor is there any evidence that plaintiff suffered significant harm as a result of missing his fourth scheduled dose of pain medication on that day. See Hallett, supra, 296 F.3d at 745-746 (where prisoner alleges delay of medical treatment evinces deliberate indifference, prisoner must show that the delay caused "significant harm and that Defendants should have known this to be the case."). In short, it appears that if plaintiff had accurately described his very limited dealings with Scovel in the SAC, his allegations would have failed to state an Eighth Amendment claim.

Thus plaintiff's Eighth Amendment claim against defendant Scovel should be dismissed at the summary judgment stage.

IV.  <u>Conclusion</u>

Accordingly, IT IS HEREBY RECOMMENDED THAT:

1. Defendant Scovel's September 9, 2011 motion for summary judgment (Dkt. No. 123) be granted; and

2. Plaintiff's September 22, 2011 motion for summary judgment (Dkt. No. 130) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 31, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2
will2381.msj